IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
METROPOLITAN DIRECT PROPERTY AND    )    2:07-cv-01554-GEB-EFB
CASUALTY INSURANCE COMPANY, a       )
Rhode Island Corporation, and       )    ORDER
ECONOMY PREMIER ASSURANCE COMPANY,  )
an Illinois Corporation,            )
                                    )
               Plaintiffs,          )
                                    )
          v.                        )
                                    )
LAURA TERMINI, an individual,       )
ANTOINETTE TERMINI, an individual,  )
and JUSTIN ROBERT JORDAN, an        )
individual,                         )
                                    )
               Defendants.          )
_____)
```

On February 25, 2008, the parties filed cross-motions for summary judgment seeking declaratory judgment under 28 U.S.C. § 2201 as to whether bodily injuries sustained by Laura Termini on November 21, 2006, are covered under an excess insurance policy issued by Metropolitan Direct Property and Casualty Insurance Company ("Metropolitan"). (Defs.' Mot., Dkt. No. 23; Pls.' Mot., Dkt. No. 19.) Oral arguments were heard on the motions March 24, 2008. For

1

the following reasons, Plaintiffs' motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

BACKGROUND

Laura Termini ("Laura") is the daughter of Antoinette and Dominic Termini and lived with her parents in New York prior to moving to California in 2005. (Stipulated Statement of Undisputed Facts ("SUF") ¶ A1.) While in New York, Laura drove a 2000 Nissan automobile, which was scheduled as an insured vehicle under an automobile liability policy issued by Economy Premier in the State of New York to Dominic Termini ("the New York Primary Policy"). (Id. at 2:24-27, ¶ B3.) The New York Primary Policy included a single limit of $500,000 per occurrence. At that time, the Nissan was also mentioned on a Personal Excess Liability Policy ("Excess Policy") issued by Metropolitan Direct to Dominic Termini. (Id. at 3:2-5, ¶ B4.) The Excess Policy covers all sums in excess of the limit of liability required to be maintained in an underlying policy for damages to others caused by an occurrence for which the insured is responsible. (SUF, Ex. H ("Excess Policy") at 1, 5.) In other words, the underlying (or Primary) policy covers liability against the insured first, and the Excess Policy covers whatever the primary policy does not cover (up to a certain limit).

In 2005, Laura moved to California and took the Nissan with her. (SUF ¶ B5.) In January 2006, Metropolitan received a request from the Termini's insurance broker to have the Nissan deleted from the New York Primary Policy. (Id. ¶ B7.) No request was made to cancel coverage of the Nissan on the Excess Policy. (Id. ¶ B8.) After the Nissan was deleted from the New York Primary Policy, another vehicle, a 1997 Buick Skylark, was added as an insured vehicle under

2

the New York Primary Policy. (Id. ¶ 10.) "In connection with the deletion of the Nissan Automobile from the New York Primary Policy, a new policy, the California Primary Policy, was issued that identified the Nissan Automobile as the sole scheduled insured vehicle." (Id. ¶ B11.) On January 11, 2006, Metropolitan issued a revised declarations page to the Excess Policy that did not mention the Nissan. (Id. ¶ 12.) No separate notice was sent to the Termini family concerning the diminution of coverage of the Excess Policy with regards to the elimination of the Nissan from the Excess Policy. When the Excess Policy was renewed on September 8, 2006, the declarations page did not mention the Nissan, but it did mention the Buick Skylark. (Id. ¶ B13.) On November 21, 2006, Laura sustained bodily injuries while a passenger in the Nissan. (Id. ¶ A1.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, all evidence is viewed in a light most favorable to the opposing party, and reasonable inferences are drawn in favor of the opposing party. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). The parties to this action have stipulated to all of the material facts. (SUF at 2:4-8.) "[T]he initial interpretation of a contract is a matter of law for the court to decide." Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (internal quotation marks omitted).

///
///

DISCUSSION

The parties agree that absent an exclusion, the Excess Policy would cover Laura Termini's injuries. (Pls.' Mot. at 7 n.2.) However, the parties disagree whether exclusion D1 in the Excess Policy applies, precluding coverage of Laura Termini's injuries. Exclusion D1 states the following: "This policy does not apply to **personal injury** or **property damage**: . . . arising out of ownership, maintenance or use of any: . . . land motor vehicle owned by . . . an **insured** unless covered under an **underlying policy**[.]"[1] The issue is whether the Nissan is covered under an underlying policy.

Neither party addressed which law should apply in interpreting the Excess Policy, although both implicitly assume New York law applies to the contract in arguing whether New York Consolidated Laws, Insurance section 3425 should apply. (Defs.' Mot. at 11:24-12:1; Pls.' Opp'n at 9:4-5.) "California generally follows the Restatement 2d of Conflict of Laws in resolving choice of law questions." 2 B.E. Witkin, Summary of California Law, § 25 (10th ed.).

> The law of the state that the parties understood was to be the principal location of the insured risk during the term of the policy governs the validity of a contract of fire, surety, or casualty insurance and the rights created under it, unless, with respect to a particular issue, another state is more significantly related to the transaction and the parties.

Id. § 27. In this action, the parties disagree as to what the Excess Policy's insured risk is. (See Pls.' Opp'n at 11:17-21; Defs.' Reply at 4:24-26.) Regardless, New York is more significantly related to the transaction and the parties than California. Although Laura

---

[1] Bolded words are terms that are defined in the Excess Policy.

4

1  Termini and Justin Robert Jordan are domiciled in California and the
2  Nissan is located there, Antoinette Termini resides in New York.  The
3  insurance contract was negotiated and entered into in New York.
4  Dominic Termini made the premium payments from New York.  See 2 B.E.
5  Witkin, Summary of California Law, § 25 (10th ed.) (listing factors in
6  determining the state of most significant relationship).

> New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'  When the provisions are unambiguous and understandable, courts are to enforce them as written. . . . 'An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' . . . Moreover, to 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon.' . . .  'Once a court concludes that an insurance provision is ambiguous, the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.' . . . Thus, '[i]f the extrinsic evidence does not yield a conclusive answer as to the parties' intent . . . any ambiguity in [the] . . . policy should be resolved in favor of the insured.'

Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42-43 (2d Cir. 2006) (quoting first and second Morgan Stanley, 225 F.3d at 275 (citations omitted), quoting third Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 71 (N.Y. App. Div. 1998), quoting fourth and fifth Morgan Stanley, 225 F.3d at 275-76.

The Excess Policy defines "underlying policy" to mean "a policy listed as an **underlying policy** in the Declarations." (SUF, Ex. H (Excess Policy) at 6.) The Declarations are three pages attached to the Excess Policy. The first page of the Declarations states "YOUR POLICY HAS BEEN ISSUED AND RATED BASED ON THE FOLLOWING INFORMATION. PLEASE NOTIFY US OF ANY CHANGES." Beneath this statement is a list of three vehicles, none of which are the Nissan. The second page contains the title "UNDERLYING POLICY INFORMATION. REQUIRED UNDERLYING INSURANCE LIMITS IF UNDERLYING INSURER IS METROPOLITAN." Beneath this is listed information on the limits required for automobiles, homeowners or comprehensive personal, watercraft and other liability insurance. Beneath that section is a section with similar information for "REQUIRED UNDERLYING INSURANCE LIMITS IF UNDERLYING INSURER IS NOT METROPOLITAN." The third page contains the following table:

| UNDERLYING POLICY TYPE | UNDERLYING INSURER | UNDERLYING LIABILITY LIMITS |
|---|---|---|
| AUTOMOBILE | METROPOLITAN | $ 500,000 |
| HOMEOWNERS | METROPOLITAN | $ 300,000 |

Defendants argue "a policy listed as an **underlying policy** in the Declarations" refers to a policy listed on page two under UNDERLYING POLICY INFORMATION. Defendants argue

> [the table on page three] is on a page with no heading and nothing to indicate that these are the 'underlying polic[ies] . . . listed as underlying polic[ies] in the Declarations.' . . . [I]t is clear beyond dispute that the California Primary Policy meets the definition of an "underlying policy" in that . . . the listing under the heading 'UNDERLYING POLICY INFORMATION' [on page two] is the list of underlying policies referred to in the definition of the term. It describes the California Primary Policy, which has precisely the limits, required in the list.

6

(Defs.' Opp'n at 12:5-13:5.)  Defendants further argue extrinsic evidence establishes that "[t]he deletion of the Nissan occurred in connection with the creation of coverage for the Nissan under another policy issued by Metropolitan.  The insureds' objectively reasonable expectation was that coverage under the [Excess Policy] for liabilities arising out of the use of the Nissan would continue."  (Defs.' Reply at 7:1-5.)

Plaintiffs rejoin that page two "*only states what the minimum limits of liability must be.* It does *not* identify the *actual* 'underlying policy.'"  (Pls.' Opp'n at 6:11-14.)  Plaintiffs further argue

> 'underlying policy' is not defined as 'any' policy issued by Metropolitan which just happens to have limits of liability of $100,000/$300,000, [those listed on page two], irrespective of the vehicles which that policy might insure.  Instead, 'underlying policy' is defined as the policy *actually listed as such* in [page three of] the Declarations of the New York Excess Policy, and the only policy so listed is the primary policy which has $500,000 in liability limits; i.e., the New York Primary Policy.

(Pls.' Opp'n at 7:13-21.)  Plaintiffs argue extrinsic evidence establishes that

> [it] was entirely appropriate to remove the 2000 Nissan from the New York Excess Policy because removing the 2000 [Nissan] from the New York Primary Policy automatically eliminated coverage under the New York Excess Policy.  If a vehicle is not covered under the primary policy, it is not covered under the excess policy which only becomes operative when the primary policy has exhausted.

(Pls.' Mot. at 3:23-28.)  Plaintiffs further argue that after the Nissan was removed from the Excess Policy the premium was reduced, and

> [t]hereafter the Terminis added a third vehicle — a 1997 Buick Skylark — to the New York Primary Policy, which was also added to the New York Excess Policy.  At the time of the accident [the

1 | Excess Policy] insured three vehicles . . . and
2 | the premium was adjusted back up . . . . It was clear for all to see what was going on here. The
3 | Terminis added cars to coverage and deleted cars from coverage. They were issued primary and
4 | excess policies which showed vehicles added, and which showed when the vehicles were removed. The
5 | premiums went up when they added vehicles, and the premiums went down when vehicles were deleted.

(Pls.' Reply 6:18-22; 7:1-5; 13:1-5.)

The definition of an underlying policy, "a policy listed as an **underlying policy** in the Declarations," is not clear because there are three pages of Declarations containing several "lists" and none of them are titled "Underlying Policies." The list on page two is titled "Underlying Policy Information" and the list on page three is titled "Underlying Policy Type." Examining the contract as a whole only deepens the ambiguity. For instance, the conditions section of the Policy contains a paragraph titled "Maintenance of Underlying Insurance," which informs the insured that

> [t]his policy requires **you** to have the types and amounts of insurance shown in the Declarations Page. If **you** fail to maintain the required **underlying policies** for any reason, . . . we will be liable only for the amount that we would have been liable for had you maintained the required insurance. **You** will be liable for the amount that would have been covered by the **underlying policy**.

A reasonably intelligent person could conclude that "underlying policy" is a policy that meets the requirements shown on page two of the Declarations.

Moreover, extrinsic evidence does not "yield a conclusive answer as to the parties' intent." The Terminis could have reasonably assumed that requesting Metropolitan to remove the Nissan from the New York Primary Policy and to add it to a California primary policy (also issued by Metropolitan) meant that Metropolitan would have continued

8

1 to cover the Nissan under the Excess Policy since it was covered by an
2 underlying policy that met the required underlying insurance limits
3 for Metropolitan policies.  Moreover, it is not clear from the
4 evidence that the Terminis ever requested to have the Skylark added to
5 the Excess Policy.  Since Plaintiffs have failed to provide conclusive
6 extrinsic evidence demonstrating that the parties intended the
7 underlying policy to mean only those policies listed on page three,
8 the ambiguity in the Excess Policy shall be resolved in favor of the
9 insured.  Therefore, "underlying policy" means a policy that meets the
10 required underlying insurance limits listed on page two of the
11 Declarations.  Since Plaintiffs admit that the California Policy meets
12 those requirements, Exclusion D1 does not apply.  (See Pls.' Opp'n at
13 2:19-25.)  Accordingly, coverage does exist for claims arising out of
14 injuries sustained by Laura Termini in an automobile action which
15 occurred on November 21, 2006, under the excess insurance policy
16 identified in this action as the New York Excess Policy.[2]

SUMMARY

         For the reasons stated, Plaintiffs' motion for summary
judgment is denied.  Defendants' motion for summary judgment is
granted.
         IT IS SO ORDERED.

Dated:  April 17, 2008

                              _____
                              GARLAND E. BURRELL, JR.
                              United States District Judge

---

[2] Since summary judgment is entered under the terms of the Excess Policy, a decision need not be reached on the parties' arguments regarding New York Consolidated Laws, Insurance, Section 3425.